IN THE COURT OF APPEALS OF NORTH CAROLINA

 2021-NCCOA-400

 No. COA 20-701

 Filed 3 August 2021

 New Hanover County, No. 13 CVS 2502

 LAURI A. NIELSON (fka SCHMOKE), Plaintiff

 v.

 RAYMOND SCHMOKE, Defendant

 Appeal by Defendant from Order entered 18 March 2020 by Judge George F.

 Jones in New Hanover County Superior Court. Heard in the Court of Appeals 12

 May 2021.

 Butler & Butler, L.L.P., by Hunter E. Fritz, for plaintiff-appellee.

 Kerner Law Firm, PLLC, by Thomas W. Kerner, for defendant-appellant.

 HAMPSON, Judge.

 Factual and Procedural Background

¶1 Raymond Schmoke (Defendant) appeals from an Order entered 18 March 2020

 concluding judgments originally entered in a Michigan Court on 29 December 2003

 and 12 October 2009, and filed as foreign judgments in North Carolina on 28 June

 2013, remained enforceable in North Carolina under North Carolina’s 10-year

 statutory enforcement period for judgments. Specifically, the trial court’s Order

 denied Defendant’s Motion to Abate Post-Judgment Proceedings and required
 NIELSON V. SCHMOKE

 2021-NCCOA-400

 Opinion of the Court

 Defendant and his current spouse to respond to discovery in supplemental

 proceedings, including production of documents and other information requested

 under N.C. Gen. Stat. § 1-352.2. The Record tends to reflect the following:

¶2 On 29 December 2003, the Circuit Court for Manistee County, Michigan

 (Michigan Court) entered a judgment (Michigan Divorce Judgment) in favor of Lauri

 Nielson (Plaintiff) against Defendant, her ex-husband. On 12 October 2009, the

 Michigan Court entered an additional judgment in favor of Plaintiff (Supplemental

 Judgment).

¶3 On 28 June 2013, pursuant to North Carolina’s version of the Uniform

 Enforcement of Foreign Judgments Act (UEFJA) contained in N.C. Gen. Stat. § 1C-

 1701 et seq. (2019), Plaintiff enrolled the Michigan Divorce Judgment and

 Supplemental Judgment (collectively, the Foreign Judgments), and commenced the

 current action through a Notice of Filing and by filing the Foreign Judgments in

 North Carolina with the New Hanover County Clerk of Superior Court. Consistent

 with N.C. Gen. Stat. § 1C-1703, Plaintiff filed the Foreign Judgments with a

 supporting affidavit averring the Foreign Judgments were final judgments and were,

 at the time, unsatisfied in the amount of $1,323,096.31. Consistent with N.C. Gen.

 Stat. § 1C-1704, Plaintiff served a Notice of Filing on Defendant along with copies of

 the Foreign Judgments and supporting affidavit.
 NIELSON V. SCHMOKE

 2021-NCCOA-400

 Opinion of the Court

¶4 On 29 July 2013, Defendant filed a Motion to Strike Affidavit and Notice of

 Defenses to Enforcement of Foreign Judgments pursuant to N.C. Gen. Stat. § 1C-

 1705. Defendant subsequently filed a Notice of Additional Defenses on 11 March

 2014, along with a Motion to Strike Plaintiff’s Amended Affidavit.

¶5 On 12 August 2015, the trial court entered a Judgment (North Carolina

 Judgment) concluding Plaintiff had met all the requirements under the UEFJA and

 the Foreign Judgments were entitled to Full Faith and Credit in North Carolina. The

 trial court entered the Judgment in favor of Plaintiff in the amount of $1,323,096.31

 plus interest from and after 23 August 2013.

¶6 After an unsuccessful attempt to enforce the Judgment by way of Writ of

 Execution, Plaintiff began supplemental proceedings by conducting an oral

 examination of Defendant under N.C. Gen. Stat. § 1-352. Following this oral

 examination, on 2 October 2019, Plaintiff filed and served two separate Motions

 seeking Defendant and his current spouse to “Produce Documents and Information”

 pursuant to N.C. Gen. Stat. § 1-352.2. Both Motions were heard ex parte by the Clerk

 of Court, and on 3 and 9 October 2019 respectively, the Clerk of Court entered orders

 granting these Motions (collectively, Discovery Orders).

¶7 On 29 October 2019, Defendant filed a Motion to Set Aside the Order of the

 Clerk of Court ordering him to provide discovery in supplemental proceedings.

 Subsequently, on 19 December 2019, Defendant filed a Motion to Abate Post-
 NIELSON V. SCHMOKE

 2021-NCCOA-400

 Opinion of the Court

 Judgment Proceedings on the basis the Foreign Judgments were no longer

 enforceable in North Carolina. During a 9 January 2020 hearing before the trial

 court on these Motions, Defendant argued all post-judgment enforcement efforts,

 including supplemental proceedings, should abate because the statutory 10-year

 period for enforcing a judgment in North Carolina had expired. Specifically,

 Defendant contended because the Supplemental Judgment had been entered by the

 Michigan Court in October 2009, at the latest, the enforcement period of the Foreign

 Judgments had expired in October 2019, and, thus, the North Carolina Judgment

 was also now unenforceable.

¶8 In its Order entered 18 March 2020, the trial court “[wa]s persuaded by the

 logic of Wells Fargo Equip. Fin., Inc. v. Asterbadi, 841 F.3d 237 (4th Cir. 2016)

 (applying 28 U.S.C. § 1963) and h[e]ld[] that the Enforcement Period started to run

 on the date the Foreign Judgments were filed with the Clerk of Court: June 28, 2013.”

 The trial court also determined the Foreign Judgments “were entitled to Full Faith

 and Credit in the State of North Carolina.” The trial court subsequently concluded:

 “[t]he Enforcement Period to enforce the North Carolina Judgment ha[d] not expired”

 and “[t]he Enforcement Period to enforce the Foreign Judgments ha[d] not expired.”

 Accordingly, the trial court ordered: “Defendant’s Motion to Abate Post-Judgment

 Proceedings is respectfully DENIED[.]” The trial court also denied Defendant’s

 Motion to Set Aside the Clerk’s Order requiring discovery responses and ordered
 NIELSON V. SCHMOKE

 2021-NCCOA-400

 Opinion of the Court

 Defendant and his current spouse to “provide to counsel for the Plaintiff the

 documents and information set forth” in the Discovery Orders entered by the Clerk

 of Court “within ten (10) days following the entry of this Order.” Defendant filed

 written Notice of Appeal on 17 April 2020.

 Appellate Jurisdiction

¶9 As an initial matter, Plaintiff characterizes the trial court’s 18 March 2020

 Order denying Defendant’s Motion to Abate Post-Judgment Proceedings and

 requiring Defendant and his spouse to respond to discovery in post-judgment

 supplemental proceedings as a “Discovery Order[,]” which is interlocutory and not

 immediately appealable. For his part, Defendant contends the trial court’s 18 March

 2020 Order constitutes an appealable final order, or, in the alternative—if it does

 constitute an interlocutory order—it is one that, in effect, determines the action and

 prevents a judgment from which an appeal might be taken or otherwise affects a

 substantial right under N.C. Gen. Stat. § 7A-27(b).

¶ 10 “Interlocutory orders and judgments are those made during the pendency of

 an action which do not dispose of the case, but instead leave it for further action by

 the trial court to settle and determine the entire controversy.” Sharpe v. Worland,

 351 N.C. 159, 161, 522 S.E.2d 577, 578 (1999) (quotation marks and citations

 omitted). “Generally, there is no right of immediate appeal from interlocutory orders

 and judgments.” Id. (citations omitted) “The purpose of this rule is to prevent
 NIELSON V. SCHMOKE

 2021-NCCOA-400

 Opinion of the Court

 fragmentary and premature appeals that unnecessarily delay the administration of

 justice and to ensure that the trial divisions fully and finally dispose of the case before

 an appeal can be heard.” Id. at 161, S.E.2d at 578-79 (quotation marks and citations

 omitted).

¶ 11 Here, fundamentally, the trial court’s 18 March 2020 Order resolves all issues

 before it on the basis the statutory 10-year period to enforce the Foreign Judgments

 in North Carolina had not expired, resulting in a Judgment enforceable through

 execution and supplemental proceedings. Thus, the trial court’s Order is certainly in

 the nature of a final Order or Judgment from which appeal may be taken. See Veazey

 v. City of Durham, 231 N.C. 357, 361-62, 57 S.E.2d 377, 381 (1950) (“A final judgment

 is one which disposes of the cause as to all the parties, leaving nothing to be judicially

 determined between them in the trial court.” (citations omitted)).

¶ 12 Moreover, presuming the trial court’s Order is interlocutory—to the extent it

 may be interpreted as compelling discovery in supplemental proceedings without

 imposing a sanction for failure to comply—we agree with Defendant the trial court’s

 Order is one affecting a substantial right which would be lost absent immediate

 appeal permitting review under N.C. Gen. Stat. § 7A-27(b)(2)(a); that is, absent an

 immediate appeal, Defendant may be subject to enforcement proceedings, including

 execution on his property or the imposition of sanctions on a Judgment that may not

 otherwise be enforceable. This is exactly what application of the 10-year enforcement
 NIELSON V. SCHMOKE

 2021-NCCOA-400

 Opinion of the Court

 period is designed to prevent. Indeed, it is unclear how, absent this immediate

 appeal, Defendant would ever be able to seek direct appellate review of the trial

 court’s decision.1 Consequently, for purposes of this appeal, we conclude Defendant

 has established his right to appeal the trial court’s Order and, in turn, his appeal is

 timely and properly before us.

 Issue

¶ 13 The dispositive issue on appeal is whether the trial court properly concluded

 the 10-year period for enforcement of Plaintiff’s Foreign Judgments in North Carolina

 accrued on the date the Foreign Judgments were filed in North Carolina on 28 June

 2013 and, thus, had not expired as of 18 March 2020.

 Analysis

¶ 14 The trial court determined as a matter of law, the 10-year period to enforce the

 Foreign Judgments in North Carolina began to accrue upon the filing of the Foreign

 Judgments in North Carolina, consistent with the UEFJA. We apply a de novo review

 to issues of law. Falk Integrated Techs., Inc. v. Stack, 132 N.C. App. 807, 809, 513

 S.E.2d 572, 574 (1999); see also Goetz v. N.C. Dep’t of Health & Hum. Servs., 203 N.C.

 App. 421, 425, 692 S.E.2d 395, 398 (2010) (“Where there is no dispute over the

 relevant facts, a lower court’s interpretation of a statute of limitations is a conclusion

 1 Acknowledging Defendant might also have sought a form of discretionary review

 through a Petition for Writ of Certiorari filed under N.C.R. App. P. 21.
 NIELSON V. SCHMOKE

 2021-NCCOA-400

 Opinion of the Court

 of law that is reviewed de novo on appeal.” (citation omitted)).

¶ 15 As a general proposition, by application of statute, a money judgment remains

 enforceable in North Carolina for a period of 10 years from the entry of the judgment.

 See N.C. Gen. Stat. § 1-234 (2019) (governing docketing of judgments and providing:

 “[t]he judgment is a lien on the real property in the county where the same is docketed

 . . . for 10 years from the date of entry of the judgment under G.S. 1A-1, Rule 58, in

 the county where the judgment was originally entered.”); N.C. Gen. Stat. § 1-306

 (2019) (governing enforcement “as of course” of judgments and providing in part:

 “[h]owever, no execution upon any judgment which requires the payment of money

 may be issued at any time after ten years from the date of the entry thereof . . . .”);

 see also N.C. Gen. Stat. § 1-47(1) (10-year statute of limitations to bring an action

 “[u]pon a judgment or decree of any court of the United States or of any state or

 territory thereof . . . .”).

¶ 16 Here, Defendant contends the Foreign Judgments—and, thus, the subsequent

 North Carolina Judgment entered acknowledging the validity of those Foreign

 Judgments and rejecting Defendant’s alleged defenses—can no longer be enforced in

 North Carolina because the 10-year enforcement period lapsed, at the latest, on 13

 October 2019, 10 years after the entry of the Supplemental Judgment in Michigan.

 On the other hand, Plaintiff contends the filing of the Foreign Judgments in North

 Carolina consistent with the UEFJA effectively results, for enforcement purposes, in
 NIELSON V. SCHMOKE

 2021-NCCOA-400

 Opinion of the Court

 a new judgment in North Carolina that is enforceable for 10 years from its enrollment

 in North Carolina, which occurred in this case on 28 June 2013. The trial court agreed

 with Plaintiff and was persuaded by the logic of the U.S. Court of Appeals for the

 Fourth Circuit’s (Fourth Circuit) decision in Asterbadi. In turn, we agree with the

 trial court that Asterbadi is persuasive and instructive to the analysis.

¶ 17 In Asterbadi, the Fourth Circuit “address[ed] the enforceability of a judgment

 originally entered in the Eastern District of Virginia but registered for enforcement

 in the District of Maryland under 28 U.S.C. § 1963[,]” which governs registration of

 judgments from other federal districts. Asterbadi, 841 F.3d at 239. “Particularly,”

 the Fourth Circuit “consider[ed] the time period during which the judgment

 remain[ed] enforceable in Maryland.” Id. The Fourth Circuit explained the factual

 background of the case:

 Collecting on a financing debt incurred by Dr. Nabil J.
 Asterbadi, CIT/Equipment Financing, Inc. (“CIT”) obtained a
 $2.63 million judgment against Asterbadi in 1993, in the Eastern
 District of Virginia. Under Virginia law, that judgment remained
 viable for 20 years. Roughly 10 years after the judgment had been
 entered, on August 27, 2003, CIT registered the judgment in the
 District of Maryland pursuant to § 1963. Under Maryland law,
 made relevant by Federal Rule of Civil Procedure 69(a),
 judgments expire 12 years after entry.

 CIT sold the judgment to Wells Fargo Equipment Finance,
 Inc., and Wells Fargo thereafter, in April 2015, began collection
 efforts in Maryland. Asterbadi filed a motion for a protective
 order, contending that the judgment was unenforceable because
 the efforts began more than 12 years after the judgment had
 NIELSON V. SCHMOKE

 2021-NCCOA-400

 Opinion of the Court

 originally been entered in Virginia. Wells Fargo responded that
 the registration of the Virginia judgment in Maryland before it
 had expired under Virginia law became, in effect, a new judgment
 that was subject to Maryland law for enforcement. Thus, it
 argued, Maryland’s 12-year limitations period began on the date
 that the judgment was registered in Maryland, not on the date
 that the original judgment was entered in Virginia, and therefore
 the judgment was still enforceable.

 The district court agreed with Wells Fargo, concluding that
 the time limitation for enforcement of the judgment began with
 the date of its registration in Maryland, on August 27, 2003, and
 that therefore it was still enforceable against Asterbadi.

 Id. at 239-40.

¶ 18 Under 28 U.S.C. § 1963:

 A judgment in an action for the recovery of money . . . entered in
 any . . . district court . . . may be registered by filing a certified
 copy of the judgment in any other district . . . . A judgment so
 registered shall have the same effect as a judgment of the district
 court of the district where registered and may be enforced in like
 manner.

 28 U.S.C. § 1963 (2019). The Fourth Circuit observed 28 U.S.C. § 1963 “was enacted

 . . . as a device to streamline the more awkward prior practice of bringing suit on a

 foreign judgment and thereby obtaining new judgment on the foreign judgment.”

 Asterbadi, 841 F.3d at 244. The Fourth Circuit reasoned:

 Thus, instead of requiring the holder of a Virginia judgment to
 file a complaint in the Maryland district court on the basis of the
 Virginia judgment, thereby engaging the federal process to obtain
 a new judgment enforceable in the District of Maryland, § 1963
 allows the judgment holder simply to register the Virginia
 judgment in Maryland but to retain the benefits of obtaining a
 NIELSON V. SCHMOKE

 2021-NCCOA-400

 Opinion of the Court

 judgment under the former practice of suing on a judgment to
 obtain a new judgment.

 Id. The Fourth Circuit found support for this reasoning in the statutory language

 itself: “[i]ndeed, § 1963 explicitly so provides, stating that a district court judgment

 registered in another district court ‘shall have the same effect as a judgment of the

 district court . . . and may be enforced in like manner.’ ” Id. (second alteration in

 original) (quoting 28 U.S.C. § 1963). The Court in Asterbadi “thus construe[d] § 1963

 to provide for a new judgment in the district court where the judgment is registered,

 as if the new judgment had been entered in the district” and “[a]ccordingly, just as a

 new judgment obtained in an action on a previous judgment from another district

 would be enforceable as any judgment entered in the district court, so too is a

 registered judgment.” Id.

¶ 19 The Fourth Circuit further noted:

 [i]f registration were merely a ministerial act to enforce the
 Virginia judgment in Maryland, there would be no need for the
 statute to have added the language that the registered judgment
 functions the same as a judgment entered in the registration
 court. With that language, § 1963 elevates the registered Virginia
 judgment to the status of a new Maryland judgment, and it is
 accordingly enforced as a new judgment entered in the first
 instance in Maryland.

 Id. at 245.

¶ 20 “With this understanding of § 1963,” the Fourth Circuit “appl[ied] the

 principles applicable to any money judgment entered in a district court.” Id. “Under
 NIELSON V. SCHMOKE

 2021-NCCOA-400

 Opinion of the Court

 [Fed. R. Civ. P.] 69(a), the judgment [wa]s enforceable in accordance with state law,

 and in this case Maryland law provide[d] that ‘a money judgment expires 12 years

 from the date of entry or most recent renewal.’ ” Id. “Accordingly, the registered

 judgment in this case would have expired 12 years from August 27, 2003, or on

 August 27, 2015. And because Wells Fargo renewed the judgment for another 12

 years on August 26, 2015, the registered judgment remain[ed] enforceable in

 Maryland to August 26, 2027.” Id.

¶ 21 Similar to 28 U.S.C. § 1963, the UEFJA governs the filing and enforcement of

 foreign judgments in North Carolina. See N.C. Gen. Stat. §§ 1C-1701 to -1708 (2019).

 “The UEFJA enacted in North Carolina sets out the procedure for filing a foreign

 judgment.” DOCRX, Inc. v. EMI Servs. of N.C., LLC, 367 N.C. 371, 378, 758 S.E.2d

 390, 395 (2014) (citations omitted). Similar to 28 U.S.C. § 1963, the UEFJA also

 serves the purpose of providing a more streamlined option for registering a foreign

 judgment, rather than requiring a judgment creditor to have to bring a suit on the

 foreign judgment in North Carolina. Indeed, as our Supreme Court noted in DOCRX,

 the Prefatory Note to the 1964 Revised Uniform Enforcement of Foreign Judgments

 Act, states the revised UEFJA:

 adopts the practice which, in substance, is used in Federal courts.
 It provides the enacting state with a speedy and economical
 method of doing that which it is required to do by the Constitution
 of the United States. It also relieves creditors and debtors of the
 additional cost and harassment of further litigation which would
 NIELSON V. SCHMOKE

 2021-NCCOA-400

 Opinion of the Court

 otherwise be incident to the enforcement of the foreign judgment.

 Id. at 380, 758 S.E.2d at 396 (quoting Rev. Unif. Enforcement of Foreign Judgments

 Act prefatory note (1964), 13 U.L.A. 156-57 (2002)); see also N.C. Gen. Stat. § 1C-1707

 (2019) (“This Article may not be construed to impair a judgment creditor’s right to

 bring a civil action in this State to enforce such creditor’s judgment.”). Moreover, like

 28 U.S.C. § 1963, N.C. Gen. Stat. § 1C-1703 expressly provides a judgment filed in

 accordance with the UEFJA “has the same effect . . . as a judgment of this State and

 shall be enforced or satisfied in like manner[.]” N.C. Gen. Stat. § 1C-1703(a).

¶ 22 Given the similarities between 28 U.S.C. § 1963 and North Carolina’s UEFJA,

 the analysis employed by the Fourth Circuit in Asterbadi is highly persuasive and

 equally employable to this case. Asterbadi’s persuasiveness here is further

 underscored by decisions of other state courts interpreting their own foreign

 judgment registration statutes. See, e.g., Stevenson v. Edgefield Holdings, LLC, 244

 Md.App. 604, 225 A.3d 85, 99 (2020) (“Ultimately, we determine that Asterbadi

 should guide our interpretation of the effective date of foreign judgments. In other

 words, registration of a judgment within a jurisdiction gives rise to enforcement

 within that jurisdiction.”); Singh v. Sidana, 387 N.J. Super. 380, 385, 904 A.2d 721,

 724 (App. Div. 2006) (“The focus of this provision is manifestly on the commencement

 of the action to enforce the foreign judgment, not on the foreign judgment’s continuing

 validity whenever such questions as may be raised are addressed. As long as a
 NIELSON V. SCHMOKE

 2021-NCCOA-400

 Opinion of the Court

judgment is viable and enforceable in the rendering state when domestication

proceedings are commenced, that judgment becomes enforceable, by the terms of New

Jersey law, at that moment.”); Canizaro Trigiani Architects v. Crowe, 815 So.2d 386,

392 (La. App. 2 Cir. 2002) (“Therefore, the procedure for enforcement of a foreign

judgment under the EFJA results in a new Louisiana judgment just as it would if the

procedure under La. C.C.P. art. 2541 were followed.”); Pan Energy v. Martin, 813 P.2d

1142, 1144 (Utah 1991) (“[A]t least for purposes of enforcement, the filing of a foreign

judgment . . . creates a new Utah judgment which is governed by the Utah statute of

limitations . . . . [F]oreign judgments filed in Utah must also be governed by the

eight-year statute of limitations, which runs from the date of filing.”); see also Home

Port Rentals, Inc. v. Int’l Yachting Grp., Inc., 252 F.3d 399, 407 (5th Cir. 2001) (under

28 U.S.C. § 1963 “when a money judgment (1) is rendered in a federal district court

located in one state, and (2) is duly registered in a district court located in another

state, (3) at a time when enforcement of that judgment is not time-barred in either

state, the applicable limitation law for purposes of enforcement of the registered

judgment in the registration district is that of the registration state—here,

Louisiana’s 10-year liberative prescription—and it starts to run on the date of

registration.” (emphasis omitted)); Stanford v. Utley, 341 F.2d 265, 268 (8th Cir.

1965) (“[Section] 1963 is more than ‘ministerial’ and is more than a mere procedural

device for the collection of the foreign judgment. We feel that registration provides,
 NIELSON V. SCHMOKE

 2021-NCCOA-400

 Opinion of the Court

 so far as enforcement is concerned, the equivalent of a new judgment of the

 registration court.”).

¶ 23 For his part, Defendant contends we need not look to other jurisdictions for

 guidance and, instead, points to North Carolina authorities which stand for the

 proposition that in order for a foreign judgment to be enforceable in North Carolina,

 it must be filed under the UEFJA or a separate civil action filed to enforce it within

 10 years from its entry in the foreign jurisdiction under the statute of limitations

 found in N.C. Gen. Stat. § 1-47. See, e.g., Arrington v. Arrington, 127 N.C. 190, 37

 S.E.2d 212 (1900); Palm Coast Recovery Corp. v. Moore, 184 N.C. App. 550, 646 S.E.2d

 438 (2007); Elliot v. Estate of Elliot, 163 N.C. App. 577, 596 S.E.2d 819 (2004); Wener

 v. Perrone & Cramer Realty, Inc., 137 N.C. App. 362, 528 S.E.2d 65 (2000). However,

 our decision here is unrelated to efforts to register foreign judgments in North

 Carolina more than 10 years after their entry and has no bearing on the impact of

 the general rule applied in those cases. This is because, here, the initial Michigan

 Divorce Judgment was entered on 29 December 2003 and the Foreign Judgments

 were filed on 28 June 2013, and were, thus, filed within the 10-year Statute of

 Limitations mandated by N.C. Gen. Stat. § 1-47. As such, these cases are inapplicable

 to the particular issue at bar.

¶ 24 Applying the reasoning of Asterbadi—and the related cases—to North

 Carolina’s UEFJA, when a foreign money judgment is filed in North Carolina in
 NIELSON V. SCHMOKE

 2021-NCCOA-400

 Opinion of the Court

 compliance with N.C. Gen. Stat. §§ 1C-1703 and 1C-1704, such filing has the effect of

 creating a new North Carolina judgment, which “shall be enforced or satisfied in like

 manner[.]” N.C. Gen. Stat. § 1C-1703(c) (2019). This includes the 10-year

 enforcement period contemplated in N.C. Gen. Stat. §§ 1-234 and 1-306, as well as

 the running of any statute of limitations to enforce the “new” North Carolina

 judgment under N.C. Gen. Stat. § 1-47, which each begin to run upon the filing of the

 foreign judgment in North Carolina.

¶ 25 Thus, here, the trial court properly concluded the enforcement period in North

 Carolina began to run on 28 June 2013, the day the Foreign Judgments were properly

 filed in North Carolina. As the Foreign Judgments remained enforceable in North

 Carolina, the trial court also did not err by requiring Defendant and his current

 spouse to respond to the discovery requests in supplemental proceedings under N.C.

 Gen. Stat. § 1-352 et seq. Consequently, the trial court correctly denied Defendant’s

 Motion to Abate Post-Judgment Proceedings and did not err in ordering Defendant

 and his current spouse to “provide to counsel for the Plaintiff the documents and

 information set forth” in the Discovery Orders entered by the Clerk of Court.

 Conclusion

¶ 26 Accordingly for the foregoing reasons, the trial court’s 18 March 2020 Order is

 affirmed.

 AFFIRMED.
 NIELSON V. SCHMOKE

 2021-NCCOA-400

 Opinion of the Court

Judges TYSON and WOOD concur.